UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOANN EGLETES,<br><br>    Plaintiff,<br>v.<br><br>LAW OFFICES HOWARD LEE SCHIFF, P.C.,<br><br>    Defendant. | 3:10-cv-00641 (CSH)<br><br>**RULING AND ORDER<br>ON DEFENDANT'S MOTION TO<br>DISMISS AND MOTION FOR<br>EXTENSION OF TIME [Docs. ##9, 15]** |

HAIGHT, Senior District Judge:

Pending in this matter are two motions by Defendant: the first to dismiss the case, pursuant to Federal Rule of Civil Procedure 12(b)(6), and the second to extend the time within which it must respond to Plaintiff's discovery requests. For reasons set forth below, both motions are DENIED.

**I.    Background**

In her complaint, Plaintiff alleges that Defendant violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by seeking to collect sums of money to which it was not entitled.

The dispute began with a judgment against Plaintiff in Connecticut's Small Claims Court that awarded Defendant $2,022.82, inclusive of costs and fees. According to Plaintiff, the original award in Small Claims Court did not mention post-judgment interest. Nevertheless, when Defendant sought to collect on that judgment, it submitted for the Superior Court's endorsement a completed copy of the Connecticut Judicial Branch's *pro forma* execution order. That pre-printed form contained boilerplate text that commanded any employer to "cause to be levied" upon any wages the amount of the judgment, with such levy payable "unto the said

Judgment Creditor(s), *with postjudgment interest from the said Date of Judgment on the Total in line 5 above, to the date when this execution is satisfied*." Form JD-CV-3 (Rev. 3/09), executed Jan. 14, 2010,[1] Compl. ex. [Doc. #1 at 4] (emphasis added) [hereinafter the "Wage Execution Order"]. In the final, executed version of the Wage Execution Order, the italicized portion above is stricken out by hand, and the margin is initialed, apparently by the court clerk who signed the order. *Id.*

About one month later, Defendant transmitted instructions to State Marshal Sheftel, directing the marshal to execute the Wage Execution Order. *See* Wage Execution Transmittal, Feb. 12, 2010, Compl. ex. [Doc. #1 at 5] [hereinafter "Transmittal"]. In a section of the Transmittal that is captioned "Claim Information," Defendants instructed the marshal to assess an "Amount Due" of $1,017.82, which was the amount ordered by the state court in the Wage Execution Order, as well as "Interest" of $619.43. There is no indication on the present record of how the amount of interest was calculated — either upon what principal, or at what rate of interest.

Plaintiff alleges that at some time thereafter:

> [T]he marshal served the execution as directed on the plaintiff's employer with a letter from defendant "To Employer with copy for Employee" stating, inter alia, "Judgment interest accrues, on the decreasing balance, until the balance is paid. Since we are not sure how long it will take for this interim balance to be paid, we will advise you as to the additional judgment interest which will be due when we are informed that the interim balance is, or is almost paid."

Compl. ¶ 12.

---

1. It appears that the form was executed approximately two months after it was received by the judicial branch, in November of 2009.

## II. Discussion

### A. Defendant's Motion To Dismiss

#### 1. Standard of Review

The standard of review on a motion to dismiss under Rule 12(b)(6) is a familiar one. A motion to dismiss under Rule 12(b)(6) must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [ ] matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation omitted); *see also Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) ("In addition, even if not attached or incorporated by reference, a document upon which the complaint *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on such a motion." (brackets, citation, and internal quotation marks omitted; emphasis in *Roth*)). Facing a 12(b)(6) motion, all complaints must be construed liberally. *See Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

In deciding a motion to dismiss, well-pleaded facts must be accepted as true and considered in the light most favorable to the Plaintiff. *Patane v. Clark,* 508 F.3d 106, 111 (2d Cir. 2007). The factual allegations made in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). This requires the complaint to contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the plaintiff's claim. *Id.* at 556. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct.

1937, 1950, 173 L.Ed.2d 868 (2009) (citing *Twombly;* internal quotation marks omitted; emphasis added). The Supreme Court distinguishes between factual content and conclusory allegations, stating that when "bare assertions . . . amount to nothing more than a formulaic recitation of the elements" of a claim, then "the allegations are conclusory and not entitled to be assumed true." *Id.* at 1951 (citing *Twombly;* internal quotation marks omitted). The Court has said that "[d]etermining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

In sum, the Court's focus on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995).

2.  **Analysis**

The gravamen of the Complaint is that by attempting to garnish Plaintiff's wages in an amount that included interest — where the Wage Execution Order had been explicitly modified by the clerk to exclude such interest — Defendant violated the FDCPA.

In its Motion To Dismiss, Defendant argues that "Plaintiff's claim is not properly founded upon any violation of law[,] since Conn. Gen. Stat. §52-356d(e) clearly provides for post judgment interest to be added to any unpaid balances where there is an installment payment order entered by the court." [Doc. #9] at 1. At its core, Defendant's argument is that when the Small Claims Court allowed for the judgment against Plaintiff to be satisfied in installments, *see* Notice of Judgment or Disposition, *Capital One Bank v. Egletes*, No. SCC-1451 (Conn. Super. Ct. Centralized Small Claims Oct. 28, 2006), *reproduced as* Def.'s Mem. ex. A [Doc. #11-1 at 1]

[hereinafter the "Small Claims Judgment"],[2] the Small Claims Court necessarily triggered a provision of Connecticut law which entitled Defendant to interest on that judgment. And in a lengthy memorandum of law, Defendant urges this Court to adopt precisely that interpretation of an arguably ambiguous statute.

In an equally lengthy opposition, Plaintiff argues that the statute's plain language and Connecticut case law make it perfectly clear that post-judgment interest may be awarded only in the discretion of the court entering the judgment, at a discretionary rate up to 10 percent. *See* [Doc #13] at 6-15. Thus, absent a clear exercise of discretion by the Small Claims Court to assess post-judgment interest, and an equally clear exercise of discretion to determine the applicable rate of interest on that judgment, Plaintiff argues that Defendant's collection attempts are illegal.

Both parties also refer this Court to recent and ongoing developments that will hopefully resolve the ambiguity that lies at the heart of Defendant's statutory arguments. These same attorneys have briefed the same arguments regarding the interpretation of Conn. Gen. Stat. § 52-356d(e) in another case in this Judicial District, and Judge Kravitz has certified that question of statutory construction to the Connecticut Supreme Court, pursuant to Conn. Gen. Stat. § 51-199(b). *See* Am. Certification Order, *Ballou v. Law Offices Howard Lee Schiff, P.C.*, No. 3:09-cv-913 (MRK), --- F. Supp. 2d ----, 2010 WL 2070266, 2010 U.S. Dist. LEXIS 58247 (D. Conn. May 21, 2010).[3]

---

2. The Small Claims Judgment is a document upon which Plaintiff's Complaint explicitly relies, and which is therefore implicitly incorporated therein. *See* Compl. ¶ 7; *Faulkner v. Beer*, 463 F.3d 130, 134 & n.1 (2d Cir. 2006) (citing Second Circuit precedent for the proposition that it is "permissible to consider documents relied upon by plaintiff in drafting the complaint and [that are] integral to the complaint").

3. Specifically, Judge Kravitz certified the following question:

Defendant is correct that the issue certified by Judge Kravitz to the Connecticut Supreme Court will almost surely determine whether Defendant was *entitled* to post-judgment interest under Connecticut law. Once this important issue of Connecticut law is settled, it will no doubt affect the course of this litigation.

But that question of statutory interpretation, while salient, is not dispositive on the present motion to dismiss. That is because Plaintiff has another argument, more fundamental and more compelling, as to why her complaint states a claim under the FDCPA — an argument to

>   A.  Does Conn. Gen.Stat. § 52-356d(e) provide for the automatic accrual of postjudgment interest on all judgments in which an installment payment order has been entered by the court?
>
>   B.  If question "A" is answered in the affirmative, what rate of post-judgment interest applies?
>
> Judge Kravitz also certified the following facts relevant to those questions of law:
>
>   1. Ms. Ballou owed balances on two judgments obtained by Midland Funding, LLC in the Connecticut Small Claims Court.
>
>   2. In *Midland Funding, LLC v. Ballou*, No. SCC 132477, the Small Claims Court entered judgment against Ms. Ballou in the amount of $3,203.11.
>
>   3. In *Midland Funding, LLC v. Ballou*, No. SCC 198813, the Small Claims Court entered judgment against Ms. Ballou in the amount of $997.28.
>
>   4. In each case, the Small Claims Court entered an installment payment order pursuant to Conn. Gen. Stat. § 52-356d(c). Specifically, the Court ordered Ms. Ballou to pay $35 per week to satisfy the first judgment and $50 per week to satisfy the second judgment.
>
>   5. Defendant did not apply for an order awarding post-judgment interest in these cases, nor did the court issue such an order in either case.
>
>   6. Defendant sought to collect the judgment amounts plus post-judgment interest at the rate of ten percent. Specifically, Defendant sought a bank execution against Ms. Ballou and directed the Marshal to add interest at ten percent to the amount of the judgment.
>
> 2010 WL 2070266, at *4-5.

which Defendant has not responded:[4] "This is a case of greater magnitude than *Ballou* in that here, defendant law office intentionally disregarded the terms of the execution issued by the clerk, took the law into its own hands, and self-adjudicated the addition of postjudgment interest." Pl.'s Opp'n [Doc. #13] at 1-2; *see also id.* at 5-6.

The FDCPA's prohibition on false or misleading statements is clear: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute continues:

> Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> **(2)** The false representation of--
>
>> **(A)** the character, amount, or legal status of any debt; or
>
> . . .
>
> **(4)** The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> **(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> . . .
>
> **(8)** Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

---

4.    To date, Defendant has filed no reply memorandum in support of its Motion To Dismiss. The deadline to reply passed approximately two weeks ago. *See* D. Conn. L. Civ. R. 7(d).

> **(9)** The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.
>
> **(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

When all of Plaintiff's well-pleaded allegations are presumed to be true and construed in the light most favorable to her, it is clear that she states a "plausible" claim for violation of the FDCPA. Plaintiff has specifically alleged that the clerk crossed out the portion of the Wage Execution Order that would have required an employer to garnish post-judgment interest, Compl. ¶ 10, and that Defendant "transmitted the execution to the marshal with specific directions to add $619.43 in interest to the amount of the wage execution." *Id.* ¶ 11. The documents attached to the Complaint and incorporated by reference therein corroborate those allegations.[5] Defendant's attempt to garnish wages in an amount greater than that ordered by the state court in the Wage Execution Order, and Defendant's attempt specifically to garnish "Interest," could arguably constitute a violation of any of the FDCPA provisions quoted above. *See, e.g., Goins v. JBC & Assocs., P.C.*, No. 3:02-cv-1069 (MRK), 2004 WL 2063562, at *3 (D. Conn. Sept. 3, 2004) (Kravitz, J.) ("[T]he amount demanded in the November 2001 letter would still be misleading because according to Defendants, that letter included a maximum possible recovery from a civil

---

5. It goes without saying that the Court could not consider contrary factual allegations by Defendant on this motion to dismiss, and thus, in deciding the motion, I have not considered the remaining documents attached to Defendant's Motion To Dismiss other than the Small Claims Judgment. Nevertheless, I note here that defendant has not even filed an answer, and the record does not contain any suggestion that Defendant sought amendments to, or reconsideration of, the state court's Wage Execution Order. Nor is there any suggestion that Defendant pursued any other procedural vehicle to correct what it perceived to be a defect in the Wage Execution Order.

lawsuit, an amount that had not yet been awarded by any court."); *Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 269 (D. Conn. 2005) (Arterton, J.) ("[T]he letter claims an amount representing not only the actual debt owed, but the maximum obtainable statutory damages that could be awarded against plaintiff in a civil action."). Typically, amount-of-debt misrepresentations come into play before a court of law has entered a judgment for a fixed amount, and the debt collector runs into trouble by inflating the amount due upwards to the entire amount the court might eventually order to be repaid. *See Veach v. Sheeks,* 316 F.3d 690, 693 (7th Cir. 2003) ("The 'amount of debt' provision is designed to inform the debtor . . . of what the *obligation* is, *not* what the final, worst-case scenario *could* be." (emphasis in original)). Surely if it is impermissible, *ex ante*, to inflate the amount to the maximum that a court might possibly award, then it is doubly inexcusable to inflate the amount *ex post*, after a court of law has already issued an order with instructions to collect less. Plaintiff's Complaint plausibly asserts that the FDCPA prohibits the debt collector from representing to the debtor and the world that the debtor owes a new, higher amount, which reflects what the debt collector thinks the court *should* have ordered.

Defendant's Motion To Dismiss [Doc. #9] is therefore **DENIED**.

### B. Defendant's Motion for Extension of Time

Defendant has requested an extension of sixty days in which to respond to pending discovery requests from Plaintiff, citing as cause for the delay its pending motion to dismiss and Judge Kravitz's pending certification of questions of law to the Connecticut Supreme Court.

I have just denied the motion to dismiss, and the pending outcome in the Connecticut Supreme Court is not dispositive here, for reasons I have already stated *supra*. Therefore, the

request for an extension of time is **DENIED**; Defendant must respond to the subject discovery requests within ten (10) days of this Ruling and Order.

It is SO ORDERED.

Dated: New Haven, Connecticut
       July 30, 2010

                                                     */s/ Charles S. Haight, Jr.*
                                                    Charles S. Haight, Jr.
                                                    Senior United States District Judge